Filed 4/24/14

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>FLORENTINO FELIX OSUNA,<br><br>　　　Defendant and Appellant. | F067498<br><br>(Super. Ct. No. F09906451)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.

## INTRODUCTION

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended [Penal Code] sections 667 and 1170.12 and added [Penal Code] section 1170.126 (hereafter the Act [or Proposition 36]).[1] The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. (§§ 667, 1170.12.) The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

After the Act went into effect, Florentino Felix Osuna (defendant), an inmate serving a term of 25 years to life in prison following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition to recall sentence, seeking resentencing under the Act. The trial court determined defendant did not qualify (was ineligible) for resentencing and denied the petition. Defendant now appeals.

In the published portion of this opinion, we hold: (1) Disqualifying factors need not be pled and proven to a jury beyond a reasonable doubt; (2) Where there are facts in

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

the record of conviction that show an inmate was "armed with a firearm" — had the firearm available for immediate offensive or defensive use — during the commission of his or her current offense, the inmate is disqualified from resentencing under the Act even though he or she was convicted of possessing the firearm, and not of being armed with it; and (3) Being "armed with a firearm" "[d]uring the commission of the current offense," for purposes of the Act, does not require the possession be "tethered" to, or have some "facilitative nexus" to, an underlying felony. In the unpublished portion, we hold that a trial court's order finding a defendant not eligible for resentencing is appealable.

## FACTS AND PROCEDURAL HISTORY[2]

On the morning of November 5, 2009, defendant, who was driving Yvette Zendejas's car, sped through a school zone at approximately 55 miles per hour and refused to yield to an officer who attempted to pull him over. When defendant finally stopped and got out of the car, he was holding a black handgun in his left hand. He ran down the street and climbed over a fence.

Officers established a perimeter. Approximately 20 minutes later, defendant stepped out of Zendejas's house, which was inside the perimeter, and was arrested. Defendant denied having a gun and said he had been carrying a cell phone. Officers searching the home found a nine-millimeter handgun in an air conditioning duct. The gun's magazine was missing. Officers searching outside the home found a loaded nine-millimeter magazine in the direct path from the fence over which defendant climbed to the house. Officers searching the car found a second nine-millimeter magazine and a coin purse containing additional live nine-millimeter ammunition.

---

[2]     The facts of defendant's current offenses and portions of the procedural history are taken from this court's nonpublished opinion in *People v. Osuna* (May 2, 2011, F059937).

3.

On February 23, 2010, a jury convicted defendant of being a felon in possession of a firearm (former § 12021, subd. (a)(1), see now § 29800, subd. (a)(1)) and obstructing a peace officer in the performance of his or her duties (§ 148, subd. (a)(1)).[3] Defendant was found to have suffered seven prior "strike" convictions. On April 6, 2010, he was sentenced to 25 years to life in prison.

On March 4, 2013, defendant petitioned the trial court for a recall of sentence pursuant to section 1170.126. The People opposed the petition on the ground defendant was "armed with a firearm" during the commission of his current offense and was therefore disqualified from further consideration for resentencing. The People argued the facts of defendant's current offense demonstrated he was armed during commission of that offense; that factual determination need only be made by a preponderance of the evidence and did not include a pleading and proof requirement, so *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) was inapplicable; the existence of disqualifying factors was not based on proving or imposing an enhancement, or on the existence of an offense separate from possession of a firearm; and legislative history supported the conclusion defendant was armed. Defendant took the opposite position, specifically arguing simple possession of a firearm was not the same as being armed with a firearm, and the record did not show defendant had a firearm available for offensive or defensive purposes; "arming" required a "tethering felony"; and the drafters of the Act did not

---

[3] We are concerned in this case only with defendant's conviction for being a felon in possession of a firearm. Former section 12021, subdivision (a)(1) was repealed as of January 1, 2012, but its provisions were reenacted without substantive change as section 29800, subdivision (a)(1). (*People v. Sanders* (2012) 55 Cal.4th 731, 734, fn. 2.) Because defendant was convicted under the repealed statute, which was only renumbered without substantive change, we refer to former section 12021 throughout this opinion for clarity and convenience. For brevity, we will not use the word "former" and will sometimes omit the subdivision.

4.

intend that a conviction for violating section 12021 would make otherwise eligible defendants ineligible for resentencing.

On June 24, 2013, a hearing was held on defendant's petition. The trial court concluded, based on the facts adduced at the trial of defendant's current offense, that jurors necessarily found defendant personally possessed the firearm and had it available for offensive or defensive use; consequently, defendant was "armed with a firearm" within the meaning of the Act and so was ineligible for resentencing.

## DISCUSSION

### I.     The trial court's ruling is appealable.

Both parties say the trial court's denial of defendant's petition is appealable. We agree.[4] The right of appeal is statutory and "'a judgment or order is not appealable unless expressly made so by statute.'" (*People v. Mazurette* (2001) 24 Cal.4th 789, 792.) Although section 1170.126 does not specifically authorize an appeal from the denial of a petition or motion for resentencing, section 1237 provides that a defendant may appeal "[f]rom a final judgment of conviction" (*id.*, subd. (a)) or "[f]rom any order made after judgment, affecting the substantial rights of the party" (*id.*, subd. (b)). First, the trial court's denial of defendant's petition was an order made after judgment since, in a criminal case, judgment is synonymous with the imposition of sentence. (*Fadelli Concrete Pumping, Inc. v. Appellate Department* (1995) 34 Cal.App.4th 1194, 1200.) Sentence was imposed for defendant's current offense in 2010. Second, a finding of

---

[4]     The appealability issue is currently pending before the state Supreme Court. (E.g., *People v. Leggett* (2013) 219 Cal.App.4th 846, review granted Dec. 18, 2013, S214264 [concluding denial is not appealable if petition was erroneously filed by individual whose sentence is based on conviction for serious or violent felony, but is appealable in all other instances]; *Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 [concluding denial is nonappealable because Act confers no substantial rights on eligibility issue]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [concluding denial is appealable because Act confers substantial right].)

eligibility is a prerequisite to the trial court having the power to exercise resentencing discretion. If the trial court determines the inmate is ineligible, the inmate has no further opportunity to be resentenced as a second strike offender. The eligibility finding, therefore, affects the inmate's substantial rights. (See *People v. Totari* (2002) 28 Cal.4th 876, 880-887 [although § 1016.5 (requiring a defendant to be advised of the potential adverse immigration consequences resulting from his or her conviction before entering a plea of guilty or nolo contendere) does not expressly authorize an appeal from a trial court's denial of motion to vacate a judgment for failure to so advise, such an order is appealable].)

## II. Defendant was "armed with a firearm" within the meaning of the Act, neither tethering nor a facilitative nexus need be shown, and the trial court did not violate pleading and proof requirements or rules of statutory construction by finding him disqualified from resentencing as a result.

Insofar as is pertinent to this appeal, an inmate is ineligible for resentencing under the Act if his or her current sentence was "imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e)(2).) Thus, an inmate is disqualified from resentencing if, inter alia, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

"[A]rmed with a firearm" has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively. (E.g., § 1203.06, subd. (b)(3); Health & Saf. Code, § 11370.1, subd. (a); *People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*) [construing § 12022].) "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" (*People v. Weidert* (1985) 39 Cal.3d 836, 844), "and to have enacted or

6.

amended a statute in light thereof" (*People v. Harrison* (1989) 48 Cal.3d 321, 329). "This principle applies to legislation enacted by initiative. [Citation.]" (*People v. Weidert*, *supra*, at p. 844.)

Where, as here, "the language of a statute uses terms that have been judicially construed, '"the presumption is almost irresistible"' that the terms have been used '"in the precise and technical sense which had been placed upon them by the courts."'" [Citations.] This principle [likewise] applies to legislation adopted through the initiative process. [Citation.]" (*People v. Weidert, supra,* 39 Cal.3d at pp. 845-846.) Accordingly, we conclude the electorate intended "armed with a firearm," as that phrase is used in the Act, to mean having a firearm available for offensive or defensive use.

Defendant's current conviction was for violating section 12021, subdivision (a)(1), which makes it a felony for a person previously convicted of a felony to own, purchase, receive, or have in his or her possession or under his or her custody or control, any firearm. The elements of this offense are conviction of a felony and ownership or knowing possession, custody, or control of a firearm. (*People v. Snyder* (1982) 32 Cal.3d 590, 592; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922.) "A defendant possesses a weapon when it is under his dominion and control. [Citation.] A defendant has actual possession when the weapon is in his immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. [Citations.]" (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083-1084.) "Implicitly, the crime is committed the instant the felon in any way has a firearm within his control." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1410, italics omitted.)

A firearm can be under a person's dominion and control without it being available for use. For example, suppose a parolee's residence (in which only he lives) is searched and a firearm is found next to his bed. The parolee is in possession of the firearm, because it is under his dominion and control. If he is not home at the time, however, he is

7.

not armed with the firearm, because it is not readily available to him for offensive or defensive use. Accordingly, possessing a firearm does not necessarily constitute being armed with a firearm.**5**

The facts in defendant's case, however, support a finding he had a firearm available for offensive or defensive use. According to the appellate opinion affirming the conviction, which we may properly consider (*People v. Woodell* (1998) 17 Cal.4th 448, 456-457; accord, *People v. Trujillo* (2006) 40 Cal.4th 165, 180-181), defendant was actually holding a handgun when he first got out of the car. Thus, factually he was "armed with a firearm" within the meaning of the Act.

Defendant does not expressly dispute this. He contends, however, that for disqualification under the Act, there must be an underlying felony to which the firearm possession is "tethered" or to which it has some ""'facilitative nexus.'''" He concludes one cannot be armed with a firearm during the commission of possession of the same firearm.

Defendant would be correct if we were concerned with imposition of an arming *enhancement* — an additional term of imprisonment added to the base term, for which a defendant cannot be punished until and unless convicted of a related substantive offense. (*People v. Dennis* (1998) 17 Cal.4th 468, 500; see *People v. Izaguirre* (2007) 42 Cal.4th 126, 134.) In *Bland*, *supra*, 10 Cal.4th 991, the California Supreme Court construed the enhancement contained in section 12022, which imposes an additional prison term for

---

**5**      We are not confronted in this case with vicarious arming, which exists when a defendant who is not personally armed is a principal in a crime and another principal is armed, possibly without the defendant's knowledge. (See § 12022, subd. (a)(1); *People v. Paul* (1998) 18 Cal.4th 698, 706; *Bland*, *supra*, 10 Cal.4th at p. 998, fn. 3; *People v. Overten* (1994) 28 Cal.App.4th 1497, 1501-1503.) Accordingly, we express no opinion whether one can be armed with a firearm without simultaneously possessing it, or whether vicarious arming disqualifies an inmate from resentencing under section 1170.126, subdivision (e)(2).

anyone "armed with a firearm in the commission of" a felony.  The court concluded that "a defendant convicted of a possessory drug offense [is] subject to this 'arming' enhancement when the defendant possesses both drugs and a gun, and keeps them together, but is not present when the police seize them from the defendant's house[.]" (*Bland*, *supra*, at p. 995.)  The court elaborated:

> "[C]ontemporaneous possession of illegal drugs and a firearm will satisfy the statutory requirement of being 'armed with a firearm in the commission' of felony drug possession only if the evidence shows a nexus or link between the firearm and the drugs.  The federal courts, in interpreting the federal counterpart to California's weapons enhancement law [citation], have described this link as a 'facilitative nexus' between the drugs and the gun.  [Citation.]  Under federal law, which imposes specified prison terms for using or carrying a firearm "'during and in relation to'" a crime of drug trafficking, 'the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.'  [Citation.]  So too in California.

> "… [F]or a defendant *to be subject to additional punishment for being armed with a firearm*, California law requires the 'arming' to be 'in the commission or attempted commission' of the underlying felony. (§ 12022, subd. (a)(1).)  With respect to felony drug possession, a defendant is armed 'in the commission' of that crime so long as the defendant had the firearm available for use in furtherance of the drug offense at some point during the defendant's possession of the drugs.  Thus, by specifying that the added penalty applies only if the defendant is armed with a firearm 'in the commission' of the felony offense, section 12022 implicitly requires *both* that the 'arming' take place during the underlying crime *and* that it have some 'facilitative nexus' to that offense.  Evidence that a firearm is kept in close proximity to illegal drugs satisfies this 'facilitative nexus' requirement:  a firearm's presence near a drug cache gives rise to the inference that the person in possession of the drugs kept the weapon close at hand for 'ready access' to aid in the drug offense." (*Bland*, *supra*, 10 Cal.4th at p. 1002, original italics omitted, italics added; see also *In re Tameka C.* (2000) 22 Cal.4th 190, 197-198 ["in the commission of" a felony, as used in § 12022.5, means during and in furtherance of the felony].)

As *Bland* makes clear, for a defendant to be "armed" for purposes of section 12022's additional penalties, he or she must have a firearm "available for use *to further the commission of the underlying felony*." (*Bland*, *supra*, 10 Cal.4th at p. 999, italics added.) "[W]hen the underlying felony is a continuing offense, it is sufficient if the defendant has a gun available at any time during the felony *to aid in its commission*. [Citation.]" (*People v. Becker* (2000) 83 Cal.App.4th 294, 297, italics added.)

Having a gun available does not further or aid in the commission of the crime of possession of a firearm by a felon. Thus, a defendant convicted of violating section 12021 does not, regardless of the facts of the offense, risk imposition of additional punishment pursuant to section 12022, because there is no "facilitative nexus" between the arming and the possession. However, unlike section 12022, which requires that a defendant be armed "*in* the commission of" a felony for additional punishment to be imposed (italics added), the Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm "[*d*]*uring* the commission of" the current offense (italics added). "During" is variously defined as "throughout the continuance or course of" or "at some point in the course of." (Webster's 3d New Internat. Dict. (1986) p. 703.) In other words, it requires a temporal nexus between the arming and the underlying felony, not a facilitative one. The two are not the same. (*Bland*, *supra*, 10 Cal.4th at p. 1002 ["'in the commission' of" requires both that "'arming'" occur during underlying crime *and* that it have facilitative nexus to offense].)

*In re Pritchett* (1994) 26 Cal.App.4th 1754 illustrates the difference. Pritchett struck his former girlfriend on the head with the barrel of a sawed-off shotgun. He was convicted of possessing the gun under former section 12020, subdivision (a), and his sentence was enhanced, pursuant to section 12022.5, subdivision (a), for use of the firearm in commission of that offense. (*Pritchett*, *supra*, at pp. 1755-1756.) On appeal, the People argued the enhancement was valid, because Pritchett used the shotgun to strike the victim in the commission of possessing the gun. (*Id*. at p. 1757.) The Court of

10.

Appeal disagreed, explaining: "Although Pritchett used the shotgun as a club *during* his possession of it, he did not use it 'in the commission' of his crime of possession. Possession was complete without use of the shotgun. In addition to possessing it, he did use it, but using it as a club in no way furthered the crime of possession." (*Ibid*., fn. omitted.)

Following this reasoning, defendant was armed with a firearm *during* his possession of the gun, but not "in the commission" of his crime of possession. There was no facilitative nexus; his having the firearm available for use did not further his illegal possession of it. There was, however, a temporal nexus. Since the Act uses the phrase [d]uring the commission of the current offense," and not "in the commission of the current offense" (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)), and since at issue is not the imposition of additional punishment but rather eligibility for reduced punishment, we conclude the literal language of the Act disqualifies an inmate from resentencing if he or she was armed with a firearm during the unlawful possession of that firearm.

Defendant says, however, that under the language of the pertinent statutes, "a defendant is ineligible for resentencing only where an enhancement … has been pled and proved." We disagree.

As amended by the Act, the three strikes law provides in pertinent part that "[i]f a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not [a serious or violent felony as defined in the three strikes law, the defendant shall be sentenced as a second strike offender] *unless the prosecution pleads and proves* any of the following:  [¶] … [¶]  (iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C), italics added, 1170.12, subd. (c)(2)(C), italics added.)  Thus,

11.

when an initial sentencing for a current offense is at issue, there is a clear statutory pleading and proof requirement with respect to factors that disqualify a defendant with two or more prior strike convictions from sentencing as a second strike offender. (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 170; see *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1303, fn. 26 (*Kaulick*).)

Fairly read, however, section 1170.126 does not impose the same requirements in connection with the procedure for determining whether an inmate already sentenced as a third strike offender is eligible for resentencing as a second strike offender. (See *Kaulick, supra*, 215 Cal.App.4th at pp. 1298-1299, fn. 21.) Subdivision (e) of the statute provides: "An inmate is eligible for resentencing if: [¶] … [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." This language refers specifically to the disqualifying factors, and does not incorporate the pleading and proof requirements contained in other portions of sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C). Contrary to defendant's assertion, such a construction neither creates an ambiguity where none existed nor reads the pleading and proof requirement out of the statute.

Defendant points out that his current sentence was "not imposed for any of the offenses appearing" in section 667, subdivision (e)(2)(C)(i) through (iii) or section 1170.12, subdivision (c)(2)(C)(i) through (iii), as stated in section 1170.126, subdivision (e)(2). We recognize this is the literal language of the statute. The literal language of a statute does not prevail if it conflicts with the lawmakers' intent, however. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; *People v. Belton* (1979) 23 Cal.3d 516, 526.) We do not regard the language of section 1170.126, subdivision (e)(2) as indicating an intent to require a tethering offense, or the pleading and proof of an enhancement (which, as we have seen, is *not* an offense), in order to trigger the

12.

disqualifying factors contained in subdivision (e)(2)(C)(iii) of section 667 and subdivision (c)(2)(C)(iii) of section 1170.12. As previously set out, those factors are: "During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." We are aware of no provision criminalizing, or permitting imposition of an additional sentence for, the mere intent to cause great bodily injury to another person. Moreover, the drafters of the initiative knew how to require a tethering offense/enhancement if desired. (See §§ 667, subd. (e)(2)(C)(i) [disqualifying inmate if current offense is controlled substance charge in which enumerated enhancement allegation was admitted or found true], 1170.12, subd. (c)(2)(C)(i) [same].) Thus, we believe the electorate intended the disqualifying factors to have a broader reach than defendant's interpretation of the statute would give them.

"In interpreting a voter initiative like [the Act], we apply the same principles that govern statutory construction. [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) "'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) The issue is one of the interpretation of a statute and its applicability to a given situation, a question of law we review independently. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; see *People v. Cromer* (2001) 24 Cal.4th 889, 894.)

"In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.

13.

[Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008.) We also "'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo, supra,* 22 Cal.4th at p. 685.) "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 212.) "'"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]"'" (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 928.) "'[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.]" (*Horwich v. Superior Court, supra,* 21 Cal.4th at p. 276.)

Finally, we take into account the rule of lenity. "'That rule generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. But … 'that rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" [Citations.]' [Citation.] 'The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies "'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.'" [Citation.]' [Citation.]" (*People v. Nuckles* (2013) 56 Cal.4th 601, 611.) "Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 783.)

An examination of the statutory scheme as a whole supports the conclusion the phrase "[d]uring the commission of the current offense, the defendant … was armed with a firearm," as used in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), and as disqualifies an inmate from resentencing pursuant to section 1170.126, subdivision (e)(2), extends to situations in which the defendant was convicted of violating section 12021 but also had the firearm he or she was convicted of possessing available for use, either offensively or defensively. This is so even when we take into account section 1170.126, subdivision (e)(2)'s proviso that an inmate is eligible for resentencing if his or her current sentence was "not imposed for any of the offenses appearing" in those clauses of sections 667 and 1170.12.

The purpose of the three strikes law has been variously stated as being "'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses'" (*In re Young* (2004) 32 Cal.4th 900, 909) and "to promote the state's compelling interest in the protection of public safety and in punishing recidivism" (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070). Although the Act "diluted" the three strikes law somewhat (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 167), "[e]nhancing public safety was a key purpose of the Act" (*id*. at p. 175).

In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term. By including as a disqualifying factor an inmate's mere intent, during commission of the current offense, to cause great bodily injury to another person, the electorate signaled its own intent that disqualifying conduct not be limited to what is specifically punishable as an offense or enhancement. Apparently recognizing the maxim *expressio unius est exclusio alterius* — the expression of some things in a statute

15.

necessarily means the exclusion of other things not expressed (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852) — voters rendered ineligible for resentencing not only narrowly drawn categories of third strike offenders who committed particular, specified offenses or types of offenses, but also broadly inclusive categories of offenders who, during commission of their crimes — and regardless of those crimes' basic statutory elements — used a firearm, were armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

That such a construction comports with voters' intent is supported by the ballot materials related to Proposition 36. The "OFFICIAL TITLE AND SUMMARY" stated in part that the initiative "[c]ontinues to impose life sentence penalty if third strike conviction was for certain nonserious, non-violent sex or drug offenses *or involved firearm possession*." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) official title and summary, p. 48, italics added.) In summarizing then-existing law, the legislative analysis of Proposition 36 listed, as examples of violent felonies, murder, robbery, and rape; as felonies that were serious but not violent, assault with intent to commit robbery; and as felonies not classified as violent or serious, grand theft (*not* involving a firearm) and possession of a controlled substance. (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 36 by Legis. Analyst, p. 48.) In summarizing how the initiative measure would shorten sentences for some third strikers, the Legislative Analyst explained there would be some exceptions to the shorter sentence: "Specifically, the measure requires that if the offender has committed certain new or prior offenses, including some drug-, sex-, *and gun-related felonies*, he or she would still be subject to a life sentence under the three strikes law." (*Id.* at p. 49, italics added.) The legislative analysis further described how certain current third strikers would be resentenced, but explained that Proposition 36 "limits eligibility for resentencing to third strikers whose current offense is nonserious, non-violent, and who have not committed specified current and prior offenses, such as

16.

certain drug-, sex-, *and gun-related felonies*." (Voter Information Guide, Gen. Elec., *supra*, at p. 50, italics added.)

In their "ARGUMENT IN FAVOR OF PROPOSITION 36," the measure's proponents spoke in terms of making the punishment fit the crime, saving California money, and making room in prison for dangerous felons. (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52.) In their "REBUTTAL TO ARGUMENT AGAINST PROPOSITION 36," the proponents stated, in part: "Prop. 36 requires that murderers, rapists, child molesters, *and other dangerous criminals* serve their full sentences. [¶] … [¶] Today, dangerous criminals are being released early from prison because jails are overcrowded with *nonviolent offenders who pose no risk to the public*. Prop. 36 prevents dangerous criminals from being released early. *People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences*." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 36, p. 53, original italics omitted, italics added.)

Section 1 of the proposed law found and declared:

> "The People enact the Three Strikes Reform Act of 2012 to restore the original intent of California's Three Strikes law — imposing life sentences for *dangerous criminals* like rapists, murderers, and child molesters.
>
> "This act will:
>
> "(1) Require that murderers, rapists, and child molesters serve their full sentences — they will receive life sentences, even if they are convicted of a new minor third strike crime.
>
> "(2) Restore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime.
>
> "(3) Maintain that repeat offenders convicted of *non-violent, non-serious crimes like shoplifting and simple drug possession* will receive twice the normal sentence instead of a life sentence.

"(4) Save hundreds of millions of taxpayer dollars every year for at least 10 years.  The state will no longer pay for housing or long-term health care for elderly, *low-risk, non-violent inmates* serving life sentences for *minor crimes*.

"(5) Prevent the early release of dangerous criminals who are currently being released early because jails and prisons are overcrowded with *low-risk, non-violent inmates* serving life sentences for *petty crimes*." (Voter Information Guide, Gen. Elec., *supra*, text of proposed law, § 1, p. 105, italics added.)

The foregoing materials expressly distinguished between dangerous criminals who were deserving of life sentences, and petty criminals (such as shoplifters and those convicted of simple drug possession) who posed little or no risk to the public and did not deserve life sentences.  It is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as nondangerous or posing little or no risk to the public.  A felon who has been convicted of two or more serious and/or violent felonies in the past, and most recently had a firearm readily available for use, simply does not pose little or no risk to the public.  "[T]he threat presented by a firearm increases in direct proportion to its accessibility.  Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used." (*People v. Mendival* (1992) 2 Cal.App.4th 562, 573.)

In light of the clear evidence of voters' intent, we reject the claims that disqualification for resentencing under Proposition 36 requires an underlying offense or enhancement to have been pled and proved, and that a conviction for possession of a firearm cannot constitute being "armed" with a firearm for eligibility purposes.  We further conclude disqualifying factors need not be proven to a jury beyond a reasonable doubt where eligibility for resentencing under section 1170.126 is concerned.[6]

---

[6]    Defendant contends that such a construction of the statute would allow a trial court to find arming, so as to disqualify an inmate from resentencing under the Act, even if an

18.

Subdivision (f) of section 1170.126 provides that, "[u]pon receiving a petition for recall of sentence under this section, *the court shall determine* whether the petitioner satisfies the criteria in subdivision (e)." (Italics added.) We see no reason to depart from the literal language of the statute.

Of course, constitutional requirements supersede statutory language. Considered in conjunction with each other, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution require that each element of a crime or sentence enhancement be proved to the jury beyond a reasonable doubt. (*United States v. Gaudin* (1995) 515 U.S. 506, 509-510; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Jones* (1999) 75 Cal.App.4th 616, 631.) "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.) This is so whether the fact increases the statutory maximum penalty or a mandatory minimum penalty. (*Alleyne v. United States* (2013) 570 U.S. ___, ___ [133 S.Ct. 2151, 2160].) "Juries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty." (*Id*. at p. 2161, fn. 2.) "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." (*Id*. at p. 2162.)

*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Act. As the Court of Appeal explained in *Kaulick*, *supra*, 215 Cal.App.4th 1279:

---

arming enhancement was pled but found not true by a jury, thereby running afoul of constitutional proscriptions against double jeopardy. As such a situation does not exist in the present case, we decline to issue what would amount to an advisory opinion thereon.

"The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced.…

"Moreover, the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws. (*Dillon v. United States* (2010) 560 U.S. 817, [828] (*Dillon*).) At issue in *Dillon* was a modification to the sentencing guideline range for the offense of which the defendant was convicted. The law provided that a prisoner's sentence could be modified downward when the range had been lowered; however, the law provided that a sentence could only be lowered if consistent with applicable policy statements.… The Supreme Court had already held that, in order to avoid constitutional problems, the federal sentencing guidelines were advisory, rather than mandatory. The issue in *Dillon* was whether the policy statement, which did not permit reducing a sentence below the amended range except to the extent the original term was below the original range, must also be rendered advisory. (*Id*. at p. [819].) The Supreme Court concluded that it remained mandatory. This was so because the statute allowing resentencing when the sentencing range was lowered was, itself, not a plenary resentencing in the usual sense. Instead, the statute simply authorized a limited adjustment to an otherwise final sentence. (*Id*. at p. [826].) The court stated, 'Notably, the sentence-modification proceedings authorized by [the statute] are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather [the statute] represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under [this statute] do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a [modification downward] proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.' (*Id*. at p. [828].) Such decisions, stated the court, simply do not implicate Sixth Amendment rights. ([*Id.* at pp. 828-829.])

20.

"The language in *Dillon* is equally applicable here. The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding … do not implicate Sixth Amendment issues." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1303-1305.)

We recognize that *Kaulick* was concerned with a trial court's discretionary determination whether an inmate who was eligible for resentencing nevertheless should not be resentenced due to his or her dangerousness. Its reasoning applies with equal force to the initial eligibility determination, however. A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed. The trial court's determination here that defendant was armed with a firearm during the commission of his current offense did not increase the penalty to which defendant was already subject, but instead disqualified defendant from an act of lenity on the part of the electorate to which defendant was not constitutionally entitled.

Because a determination of eligibility under section 1170.126 does not implicate the Sixth Amendment, a trial court need only find the existence of a disqualifying factor by a preponderance of the evidence. (Evid. Code, § 115; see *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305 [addressing determination of dangerousness].) The record in this case amply established defendant was disqualified from resentencing as a second strike offender because he was armed with a firearm during the commission of his current offense.

## **DISPOSITION**

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
LAPORTE, J.†

---

†     Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.