Filed 11/26/14  P. v. Buenrostro-Ramirez CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAFAEL BUENROSTRO-RAMIREZ,<br><br>    Defendant and Appellant. | F067661<br><br>(Super. Ct. No. BF103480A)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Cornell, Acting P.J., Gomes, J. and Peña, J.

# INTRODUCTION

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended [Penal Code[1]] sections 667 and 1170.12 and added section 1170.126 (hereafter the Act [or Proposition 36]). The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. (§§ 667, 1170.12.) The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167–168.)

Defendant Rafael Buenrostro-Ramirez, an inmate serving a term of 26 years to life in prison following his conviction of a felony that was neither violent nor serious, filed a petition to recall his sentence under the Act. The superior court determined defendant was ineligible for resentencing and denied the petition. Defendant now appeals.

We will affirm the lower court, finding: (1) the court's ruling is appealable; (2) defendant was armed during the commission of his current offense and thus is ineligible for resentencing under the Act; and (3) the record of conviction sufficiently establishes the disqualifying factor of arming.

---

[1]Further statutory references are to the Penal Code unless otherwise indicated.

2.

## BRIEF FACTUAL AND PROCEDURAL HISTORY[2]

In August of 2003, defendant—who was on parole following a robbery conviction—was stopped by police for driving a vehicle without a license plate. A stolen Colt Cobra .38-caliber revolver, loaded with six live rounds, was recovered during the stop.

Defendant pled no contest to one count of receiving stolen property. He admitted having been convicted of two prior felonies: assault with a deadly weapon and second degree robbery. He also admitted serving three prior prison terms. Defendant was thereafter sentenced to a term of 26 years to life.

On February 6, 2013, defendant filed a petition to recall his sentence under the Act. The People opposed the petition and defendant replied thereto. Following argument heard May 21, 2013, the court denied the petition, finding defendant ineligible for resentencing under the Act. This appeal followed.[3]

## DISCUSSION

**1. Defendant Was "Armed With A Firearm" Within the Meaning of the Act, and so Was Disqualified From Resentencing**

Insofar as is pertinent to this appeal, an inmate is ineligible for resentencing under the Act if his or her current sentence was "imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e)(2).) Thus, an inmate is

---

[2]The facts of defendant's current offenses and portions of the procedural history are taken from this court's nonpublished opinion in *People v. Ramirez* (Aug. 26, 2004, F044823) 2004 Cal.App.Unpub. LEXIS 7927; 2004 WL 1908812. We have taken judicial notice, on our own motion, of our records in case No. F044823 pursuant to Evidence Code section 452, subdivision (d).

[3]The California Supreme Court confirmed the denial of a petition for resentencing is an appealable order with its recent holding in *Teal v. Superior Court* (Nov. 6, 2014, S211708) ___ Cal.4th ___ [2014 Cal. LEXIS 10481; 2014 WL 5739048].

disqualified from resentencing if, inter alia, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

As this court has recently held, a defendant is not automatically disqualified for purposes of resentencing under the Act by his or her current conviction for being a felon in possession of a firearm. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1051-1057.) Similarly here, defendant is not automatically disqualified for purposes of resentencing by his conviction for receiving a stolen firearm. Rather, eligibility for resentencing turns on whether the record of conviction establishes the defendant was armed during the commission of the current offense. (*Id.* at p. 1052.) In construing the intent of the voters in approving the Act, we previously concluded that offenders who used or were armed with a firearm during the commission of their current offense were considered to be a group of convicted persons that the electorate had no intention of extending the resentencing benefit to. (*Id.* at pp. 1053-1057; see *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1034-1038; *People v. Superior Court* (*Cervantes*) 225 Cal.App.4th 1007, 1014-1018; *People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979, 990-995.) In *Blakely*, we stated:

> "It is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as nondangerous or posing little or no risk to the public. A felon who has been convicted of two or more serious and/or violent felonies in the past, and most recently had a firearm readily available for use, simply does not pose little or no risk to the public." (*Id.* at p. 1057; *People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1038 [same]; see *People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1018 ["We do not view the electorate as deeming someone with a firearm available for use, either offensively or defensively, in the commission of a felony to be nondangerous or to pose little risk to the public"].)

4.

Here, then, we consider whether defendant was armed during the commission of his current offense. To that end, we will turn to an examination of the record of conviction, which properly "extends to the *appellate* court record" following the direct appeal of defendant's current offenses. (*People v. Woodell* (1998) 17 Cal.4th 448, 451; see *People v. Guilford* (2014) 228 Cal.App.4th 651, 660-661.) As noted in the factual summary above, during a traffic stop, a stolen firearm was found in defendant's vehicle.

Initially, we note the meaning of being armed for these purposes. "'[A]rmed with a firearm,' as that phrase is used in the Act, [means] having a firearm available for offensive or defensive use" during the commission of the current offense. (*People v. Blakely*, *supra*, 225 Cal.App.4th at p. 1052; *People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1029; see *People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at pp. 1015-1016; see also *People v. Superior Court* (*Martinez*), *supra*, 225 Cal.App.4th at pp. 989-990.)

Significantly, the appellate court record following defendant's 2004 conviction for receiving stolen property includes a preliminary hearing transcript. Kern County Sheriff's Deputy Jared Kadel testified at the hearing held September 25, 2003. More particularly, Deputy Kadel testified that on August 15, 2003, about 10:00 p.m., he and his partner Deputy Haislip were on duty in the area of South K and Lindsay Streets in Kern County. Noticing a silver Tahoe or Yukon without a license plate lamp, a traffic stop was initiated. Deputy Haislip contacted the driver, who was unable to provide identification. The driver, later identified as defendant, also provided several misspellings of his name to the deputy. A Department of Motor Vehicles check revealed a match for one of the names offered by defendant, however, the description of the individual associated with that name did not match defendant. In particular, the height, weight, and eye color were incorrect. Ultimately, defendant was arrested for providing false information to the deputy concerning his identity.

There were two other individuals with defendant in the vehicle: one seated in the front passenger seat, the other in the rear seat on the passenger's side. Neither individual was arrested. Following defendant's arrest, Deputy Kadel conducted an impound vehicle search. During that search, the deputy noted the driver's side door panel was loose and the molding was broken on the driver's side inside door handle. Behind the loose door panel was a loaded .38-caliber revolver. Deputy Kadel testified the weapon found inside the driver's side door panel was "next to where the defendant had been seated in the vehicle."[4]

After advising defendant of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Deputy Kadel asked defendant if he knew anything about the gun. Defendant said his cousin owned a shop, that his vehicle had been at his cousin's shop and, as a result, he did not know what was in his vehicle. Defendant told the deputy his cousin routinely delivered guns or drugs, or both, in vehicles. Defendant said he had observed his cousin placing "guns in the door panels" of that vehicle, the same vehicle he was driving at the time of the stop.

Later, while Deputy Kadel was transporting him to the jail, defendant indicated his cousin possessed several firearms and delivered them all over Bakersfield in his customers' vehicles, and routinely bought stolen firearms. Defendant was asked whether the gun found in his vehicle was stolen; he replied, "'It probably is.'" Deputy Haislip asked defendant if he had touched the gun or if his fingerprints would be found on the gun. Initially defendant replied his fingerprints "might" be found on the gun. Ultimately, however, he admitted touching or holding the gun earlier that day.

In light of the foregoing, the facts from defendant's current offense support a finding he had a firearm available to him for offensive or defensive use during the commission of that offense, receiving a stolen firearm.

---

[4]On cross-examination, Kadel testified he could see the gun when "looking inside the window."

Next, defendant contends "the plain language of sections 667 and 1170.12 shows that any arming allegation must be attached to an underlying charge and is not satisfied by proof the defendant merely possessed a gun." As this court recently explained in *People v. Osuna*, *supra*, 225 Cal.App.4th 1020, such a connection, or as the defendant argued there, a "tethering" or "facilitative nexus" would be required if the court were concerned with an arming enhancement:

> "Defendant … contends … that for disqualification under the Act, there must be an underlying felony to which the firearm possession is 'tethered' or to which it has some 'facilitative nexus.' He concludes one cannot be armed with a firearm during the commission of possession of the same firearm.

> "Defendant would be correct if we were concerned with imposition of an arming *enhancement*—an additional term of imprisonment added to the base term, for which a defendant cannot be punished until and unless convicted of a related substantive offense. [Citations.] In [*People v.]* *Bland* [(1995)] 10 Cal.4th 991, the California Supreme Court construed the enhancement contained in section 12022, which imposes an additional prison term for anyone 'armed with a firearm in the commission of' a felony. The court concluded that 'a defendant convicted of a possessory drug offense [is] subject to this "arming" enhancement when the defendant possesses both drugs and a gun, and keeps them together, but is not present when the police seize them from the defendant's house.' (*Bland*, *supra*, at p. 995.) The court elaborated:

> "'[C]ontemporaneous possession of illegal drugs and a firearm will satisfy the statutory requirement of being "armed with a firearm in the commission" of felony drug possession only if the evidence shows a nexus or link between the firearm and the drugs. The federal courts, in interpreting the federal counterpart to California's weapons enhancement law [citation], have described this link as a "facilitative nexus" between the drugs and the gun. [Citation.] Under federal law, which imposes specified prison terms for using or carrying a firearm "'during and in relation to'" a crime of drug trafficking, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." [Citation.] So too in California.

> "'… [F]or a defendant *to be subject to additional punishment for being armed with a firearm*, California law requires the "arming" to be "in

7.

the commission or attempted commission" of the underlying felony. (§ 12022, subd. (a)(1).) With respect to felony drug possession, a defendant is armed "in the commission" of that crime so long as the defendant had the firearm available for use in furtherance of the drug offense at some point during the defendant's possession of the drugs. Thus, by specifying that the added penalty applies only if the defendant is armed with a firearm "in the commission" of the felony offense, section 12022 implicitly requires *both* that the "arming" take place during the underlying crime *and* that it have some "facilitative nexus" to that offense. Evidence that a firearm is kept in close proximity to illegal drugs satisfies this "facilitative nexus" requirement: a firearm's presence near a drug cache gives rise to the inference that the person in possession of the drugs kept the weapon close at hand for "ready access" to aid in the drug offense.' (*Bland*, *supra*, 10 Cal.4th at p. 1002, italics added & omitted ….)

"As *Bland* makes clear, for a defendant to be 'armed' for purposes of section 12022's additional penalties, he or she must have a firearm 'available for use *to further the commission of the underlying felony*.' (*Bland*, *supra*, 10 Cal.4th at p. 999, italics added.) '[W]hen the underlying felony is a continuing offense, it is sufficient if the defendant has a gun available at any time during the felony *to aid in its commission*. [Citation.]' (*People v. Becker* (2000) 83 Cal.App.4th 294, 297, italics added.)

"Having a gun available does not further or aid in the commission of the crime of possession of a firearm by a felon. Thus, a defendant convicted of violating former section 12021 does not, regardless of the facts of the offense, risk imposition of additional punishment pursuant to section 12022, because there is no 'facilitative nexus' between the arming and the possession. However, unlike section 12022, which requires that a defendant be armed '*in* the commission of' a felony for additional punishment to be imposed (italics added), the Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm '*during* the commission of' the current offense (italics added). 'During' is variously defined as 'throughout the continuance or course of' or 'at some point in the course of.' (Webster's 3d New Internat. Dict. (1986) p. 703.) In other words, it requires a temporal nexus between the arming and the underlying felony, not a facilitative one. The two are not the same. (*Bland*, *supra*, 10 Cal.4th at p. 1002 ['"in the commission" of' requires both that '"arming"' occur during underlying crime *and* that it have facilitative nexus to offense].)

"*In re Pritchett* (1994) 26 Cal.App.4th 1754 illustrates the difference. Pritchett struck his former girlfriend on the head with the barrel of a sawed-off shotgun. He was convicted of possessing the gun under

8.

former section 12020, subdivision (a), and his sentence was enhanced, pursuant to section 12022.5, subdivision (a), for use of the firearm in commission of that offense. (*Pritchett*, *supra*, at pp. 1755–1756.) On appeal, the People argued the enhancement was valid, because Pritchett used the shotgun to strike the victim in the commission of possessing the gun. (*Id*. at p. 1757.) The Court of Appeal disagreed, explaining: 'Although Pritchett used the shotgun as a club *during* his possession of it, he did not use it "in the commission" of his crime of possession. Possession was complete without use of the shotgun. In addition to possessing it, he did use it, but using it as a club in no way furthered the crime of possession.' (*Ibid*., fn. omitted.)" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1030-1032.)

In light of the foregoing, defendant was armed with a firearm during his possession of the stolen gun, but not "in the commission" of his crime of receiving stolen property. Even assuming a lack of facilitative nexus, there was, however, a temporal nexus. Since the Act uses the phrase "[d]uring the commission of the current offense," and not "in the commission of the current offense" (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)), and since at issue is not the imposition of additional punishment but rather eligibility for reduced punishment, the literal language of the Act disqualifies an inmate from resentencing if he was armed with a firearm during the crime of receiving stolen property, to wit: the stolen firearm. Thus, we hold defendant was armed during the commission of his current offense of receiving stolen property.

## 2.     The People's Proof Established Defendant's Ineligibility

Alternatively, defendant argues the People failed to sufficiently prove he was ineligible for resentencing relief under the Act.[5] He contends "the prosecution attempted to go behind the fact of his conviction to show the underlying circumstances" made him ineligible for resentencing, and that "the prosecution did not present any admissible evidence on that point."

---

[5]Defendant expressly acknowledged in his reply brief he was "not arguing that the facts relevant to resentencing eligibility need to have been pled and proved."

At the hearing regarding defendant's eligibility for resentencing under the Act, defense counsel argued the following: "There is no record for the Court to consider. There was no plea where the person admitted certain factual allegations beyond the minimum required for the 496. The Court must adopt the minimum standard of the facts on the record. There is no testimony, there is no witnesses, there is not even declarations from the people so many years later."[6] The trial court then queried counsel on the issue:

> "THE COURT: [Counsel], let me stop you. What I think by the time it got to the stage in which the defendant pled, you have your police report? I didn't know you didn't handle it back then. Is there a police report? Is there is a prelim?
>
> "The facts as put forth to me are that there was [a] stolen gun in a panel behind—in a car door panel or behind the panel. That's where the stolen gun was."

After defense counsel submitted the matter on his moving papers, the court found, in relevant part:

> "In this particular case, the object was a stolen gun. He had a gun in a car when he was driving. I believe that that makes him ineligible. So I'm going to rule—I'm not ruling on whether or not, if he would be, that he would be resentenced. I'm ruling legally he is ineligible to be resentenced, period. That's my ruling."

The Third District Court of Appeal recently addressed the issue of what may properly be considered by a court in making its eligibility determination for purposes of the Act. (*People v. Bradford* (2014) 227 Cal.App.4th 1322.) It considered the relevant authorities and concluded that "the statutory language and framework of Proposition 36 contemplate a determination of a petitioner's eligibility for resentencing based on the record of conviction, as in the line of cases including [*People v.* ]*Guerrero* [(1988) 44 Cal.3d 343] and [*People v.*] *Woodell*[, *supra*, 17 Cal.4th 448]." (*Id*. at p. 1338.) That court found a "court should be guided by *Guerrero* and its progeny and should consider

---

[6]At the commencement of the hearing, the trial court listed for the record the numerous pleadings, filed on behalf of the prosecution and the defense, it was considering.

the record of conviction to decide whether petitioner is eligible for resentencing." (*Id*. at p. 1339.)

The term "record of conviction" has been "used technically, as equivalent to the record on appeal [citation], or more narrowly, as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223; see *People v. Houck* (1998) 66 Cal.App.4th 350, 356 ["Considerations of reasonableness and fairness dictate that a 'record of conviction' include only those documents that reliably reflect the conduct of which a defendant was convicted"].)  Police reports are not part of the record of conviction (see *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1521), nor are a defendant's statements made after conviction and recounted in a postconviction report of the probation officer (*People v. Trujillo* (2006) 40 Cal.4th 165, 179).  The record of conviction does include, however, the preliminary hearing transcript (*People v. Reed*, *supra*, at p. 223), the transcript of the jury trial (*People v. Bartow* (1996) 46 Cal.App.4th 1573, 1579-1580), and the appellate record, including the appellate opinion (*People v. Woodell*, *supra*, 17 Cal.4th at p. 456).  The probation officer's report may or may not be part of the record of conviction.  (*People v. Reed*, *supra*, at p. 230 [declining to decide the question].)

Even when an item is part of the record of conviction, it is not automatically relevant or admissible for a particular purpose.  (See *People v. Trujillo*, *supra*, 40 Cal.4th at pp. 179-181; *People v. Woodell*, *supra*, 17 Cal.4th at p. 457; *People v. Guerrero*, *supra*, 44 Cal.3d at p. 356, fn. 1.)  Moreover, its admission must comport with the rules of evidence, particularly the hearsay rule and exceptions thereto.  (See *People v. Woodell*, *supra*, at pp. 457-460; *People v. Reed*, *supra*, 13 Cal.4th at pp. 220, 224-228, 230-231; *People v. Bartow*, *supra*, 46 Cal.App.4th at pp. 1579-1580.)

Here, the record of conviction is properly before us.  Our 2004 nonpublished opinion is properly a part of that record.  It, however, does not expressly state the source of its recitation of facts.  Nevertheless, that same record of conviction contains relevant

and admissible evidence in the form of the preliminary hearing transcript. Deputy Kadel's testimony at the preliminary hearing concerning the circumstances of defendant's crime serves to establish the existence of a disqualifying factor for purposes of the Act: that defendant was armed during the commission of his current offense. Therefore, any error by the trial court in considering the probation officer's report is harmless.[7]

Hearsay concerns do not preclude consideration of the preliminary hearing transcript. In *People v. Reed*, the California Supreme Court determined that Evidence Code section 1291[8] provides an exception to the hearsay rule:

> "By holding in *Guerrero* that the trier of fact may look to the entire record of conviction, '*but no further*' [citation], we precluded the prosecution from calling live witnesses to the criminal acts in the prior case. The People 'may not relitigate the facts behind the record.' [Citation.] … Live testimony from Mr. and Mrs. Martinez would have been evidence outside the record, used to relitigate the circumstances of the prior offense. Under *Guerrero*, the prosecution was absolutely barred from presenting such evidence. The witnesses' *live* testimony was thus unavailable as a matter of law." (*People v. Reed*, *supra*, 13 Cal.4th at p. 226.)

The *Reed* court held "that since the *prosecution* is not permitted to present live testimony outside the record of conviction, it is allowed, under Evidence Code section 1291, to present the prior testimony of witnesses whom the defendant has already had an opportunity and incentive to cross-examine." (*Id*. at p. 229.)

---

[7]In light of the foregoing, we need not address the Attorney General's argument that "'more relaxed rules of evidence'" apply to proceedings held pursuant to the Act.

[8]Subdivision (a) of section 1291 of the Evidence Code provides:

"Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and:

"(1) The former testimony is offered against a person who offered it in evidence in his own behalf on the former occasion or against the successor in interest of such person; or

"(2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

Here, then, the 2004 record of conviction, including the appellate court record, includes a preliminary hearing transcript containing the prior testimony of Deputy Kadel. Defendant had an opportunity to cross-examine the deputy, and in fact did cross-examine him through counsel, at the preliminary hearing. The proceedings commenced pursuant to the Act's resentencing provisions are similar in nature to proceedings undertaken to determine whether a prior conviction was a serious or violent felony, the procedure at issue in *Reed* and *Guerrero*. Because the preliminary hearing transcript was properly considered in assessing whether the facts underlying a prior conviction justify a finding of serious or violent, we hold a preliminary hearing transcript is properly considered in assessing whether the facts pertaining to a defendant's current offense establish a disqualifying factor for purposes of eligibility for resentencing under the Act.

Finally, because a review of the record of defendant's conviction establishes the existence of the disqualifying factor, there is no need to remand this matter to the trial court. In this instance, remand would be a waste of judicial resources. Such a remand would involve the trial court's consideration of the same relevant and admissible evidence this court has analyzed above and, hence, would plainly lead to the same conclusion. The trial court previously determined defendant was armed during the commission of his offense. Were it asked to consider the preliminary hearing transcript, versus the probation report and police report it assessed below, the result would not change.

## DISPOSITION

The judgment is affirmed.