Filed 3/11/15  P. v. Nusser CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060276 |
| v. | (Super.Ct.No. RIF148733) |
| ROSS DENNIS NUSSER, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michele D. Levine, Judge.  Affirmed.

Steven L. Harmon, Public Defender, and William A. Meronek, Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Charles C. Ragland, Stacy Tyler and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

In 2010, Ross Dennis Nusser (defendant) was found guilty of assault with force likely to cause great bodily injury.  (Pen. Code, § 245, subd. (a)(1)).  Because he was a third-striker, he was sentenced to 25 years to life.  Had he been only a second-striker, he would have been sentenced to at least four but not more than eight years.  (Pen. Code, §§ 245, subd. (a)(1), 667, subd. (e)(1), 1170.12, subd. (c)(1).)

In 2012, the electorate passed Proposition 36 and thus enacted the Three Strikes Reform Act of 2012 (Reform Act).  Under the Reform Act, a newly convicted third-striker may be eligible, depending on the nature of the conviction(s), for the same sentence as a second-striker.  Also under the Reform Act, a third-striker convicted and sentenced before the effective date of the Reform Act may be eligible — depending on the nature of the conviction(s), and depending also on whether he or she poses an "unreasonable risk of danger"— to be resentenced to the same sentence as a second-striker.  (Pen. Code, § 1170.126.)

In 2013, defendant filed a petition for resentencing under the Reform Act.  Over his objections, the trial court reviewed the entire reporter's transcript of his trial; it also heard live testimony from defendant himself and other witnesses.  It then ruled that defendant was ineligible for resentencing because, in the commission of the assault for which he was serving a third-strike sentence, he intended to cause great bodily injury.

Defendant appeals, contending:

1. One trial court judge had already determined that defendant was eligible for resentencing, which barred any other trial court judge from making a contrary determination.

2. The trial court could not find that defendant intended to cause great bodily injury, so as to be ineligible for resentencing, unless this had already been pleaded and proved in the original conviction proceedings.

3. Certain disparate aspects of the treatment of "prospective defendants" initially sentenced under the Reform Act and "retrospective defendants" resentenced under the Reform Act violate equal protection.

We find no error. Accordingly, we will affirm.

I

FACTUAL BACKGROUND

A. *Evidence at the 2010 Trial*.

The following facts are taken from the reporter's transcript of defendant's 2010 trial.

On April 24, 2008, around 10 p.m., Jeffery King was walking down a street in Corona when he spotted a truck that he recognized as belonging to Kostantin Ivanov. King was afraid of Ivanov, so he started running.

King heard someone chasing him. Then someone grabbed him from behind and punched him in the head some four to six times. King fell, rolled down a hill, and ended up lying on his back.

King's attacker was wearing a black shirt, red suspenders, tan pants, and black Doc Martens boots with red shoelaces. He started kicking King in the head. King did not remember how many times he was kicked, but there was "a lot of kicking."

Meanwhile, Ivanov arrived and started punching King in the face. Either the initial attacker or Ivanov said, "[W]e should curb you." To "curb" someone meant to put their mouth on the curb and to kick them in the back of the head. When a security guard approached, the initial attacker and Ivanov left. King saw the initial attacker drive away in a white Chevy Lumina.

Before going to the hospital, King was taken to a house for an in-field showup. A white Chevy Lumina was parked in front; defendant was there, wearing a black shirt, red suspenders, tan pants, and black Doc Martens boots with red shoelaces. King identified defendant as his initial attacker. He also identified defendant in court.

Defendant's Doc Martens turned out to have steel toes. King suffered a concussion and a broken nose. He remained in pain for "[a] couple [of] months."

4

B.    *Evidence at the 2013 Hearing*.

The following facts are taken from defendant's testimony at the 2013 resentencing hearing.

According to defendant, he met Ivanov for the first time a couple of hours before the incident.  He was riding with Ivanov in Ivanov's truck when they saw King running.  Ivanov said, "Stop him."  Without thinking, by "reflex" or "instinct," defendant chased King.  King took a swing at defendant, but missed.  Defendant admitted "tackl[ing]" King but denied hitting or kicking him.  He denied that he or Ivanov mentioned "curbing."

II

PROCEDURAL BACKGROUND

In 2010, a jury found both defendant and Ivanov guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)); however, it also found an enhancement for personally inflicting great bodily injury not true as to both.  (Pen. Code, § 12022.7, subd. (a).)  Pursuant to the three strikes law as it then stood, defendant was sentenced to 25 years to life.

On January 29, 2013, defendant filed a petition for resentencing pursuant to Penal Code section 1170.126.

On January 31, 2013, acting ex parte and without a hearing, Judge Becky Dugan appointed counsel for defendant and set a "recall sentence conference" in Department 64.  Thereafter, Judge Michele D. Levine, in Department 64, presided over the case.

5

On May 15, 2013, the prosecutor filed an opposition to the petition. She argued that defendant was ineligible for resentencing because he was serving a sentence for a crime in which he intended to cause great bodily injury. She submitted a partial reporter's transcript from defendant's trial.

In a written response, defense counsel argued that the prosecution had the burden of proving intent to cause great bodily injury, and that the evidence the trial court could consider was limited to the record of conviction. Defense counsel supplied the trial court with the complete reporter's transcript of the trial.

Later, however, defense counsel changed her position; she argued that the trial court was bound by the jury's finding rejecting a great bodily injury enhancement, and therefore it should not review the trial transcript at all.

The trial court ruled that it was not bound by the jury's finding. It explained: "[I]f I were to assault somebody with a firearm and try to kill them, and I took a firearm and shot it at them and it missed, I would be . . . intending to cause great bodily injury; but I could not be convicted of personally inflicting great bodily injury . . . ."

After reading the trial transcript, the trial court advised the parties that it "suggests to the Court very strongly, by clear and convincing evidence, that [defendant] intended to cause great bodily injury." However, it was concerned that defendant's intent to cause great bodily injury had not been relevant during the trial, and therefore defendant did "not necessarily aggressively pursue[]" that issue. It offered both sides an opportunity to

6

introduce additional evidence, including oral testimony and it set a hearing for that purpose.

On December 5, 2013, the trial court held an evidentiary hearing. By the time of the hearing, victim King was deceased; the trial court found that he was unavailable. Based on the trial court's ruling that it was not bound by the jury's verdict, defendant chose to testify at the hearing.[1]

At the end of the hearing, the trial court asked to see "the police reports in this matter," and it overruled defense counsel's objection to the police reports as hearsay. The prosecutor provided the police reports to the court.[2] Defense counsel then asked the trial court to review the preliminary hearing transcript.

On December 17, 2013, the trial court found that defendant was ineligible for resentencing because he intended to cause great bodily injury. It specifically found that defendant's testimony was "less than credible." It therefore denied the petition.

---

[1]    Defendant claims he was "compelled" to testify, quoting the trial court's remark, " . . . I'm going to want you to take the witness stand to testify."

In context, however, the trial court was talking about the mechanics of *where* defendant should *sit* while testifying. Defense counsel had already stated, " . . . Mr. Nusser is choosing to testify." The trial court specified that it wanted him to testify "in a more formal way," sitting at the witness stand rather than at counsel table, so the court and the court reporter could hear the questions and answers. Moreover, the court went on to say, "*[I]f you do intend to call your client*, I'm happy to hear from him." (Italics added.) Thus, it is clear from the record as a whole that defendant chose to testify voluntarily.

[2]    The police reports have not been included in the appellate record.

7

III

APPEALABILITY

Defendant contends that the order denying his petition is appealable as an "order made after judgment, affecting the substantial rights of the party." (Pen. Code, § 1237, subd. (b).) While this appeal was pending, the California Supreme Court agreed, holding that the denial of a petition for resentencing under section 1170.126 is an appealable postjudgment order. (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 601.)

IV

THE EFFECT OF JUDGE DUGAN'S ORDER

Petitioner contends that Judge Dugan determined that he was eligible for resentencing, and Judge Levine lacked jurisdiction to make a contrary determination.

We disagree with both prongs of this contention.

First, Judge Dugan did not make any eligibility determination. Her minute order does not mention eligibility. It appears that all she did was act as a master calendar judge and assign the case to a trial department — or, in defendant's words, "act[] as a sort of traffic cop . . . ."[3]

---

[3]    The People assert that, at the time, Judge Dugan was the presiding judge and, as such, responsible for assigning cases to departments. Actually, while Judge Dugan was the presiding judge of the juvenile court from 2005 to 2007, she has never been the presiding judge of the superior court. (1 California Courts and Judges Handbook (2012-2013) 352.)

8

Defendant therefore argues that Judge Dugan's minute order should be viewed as an implied eligibility determination. In support of this argument, he has asked us to take judicial notice of the petition in an unrelated case and of Judge Dugan's ruling in that case. Without a hearing, she found that the petitioner was ineligible for resentencing and denied the petition. We hereby grant the request for judicial notice. However, the judicially noticed material does not support defendant's position. Significantly, in the other case, Judge Dugan *expressly* found that the petitioner was ineligible. This undercuts defendant's claim that she made an *implied* finding in this case. For all we know, it is her practice to decide only easy cases, such as those in which the petition fails to state a prima facie case, but to assign cases that will require a more extensive review of the record of conviction to a trial department. Another possibility is that she had been the sentencing judge, and thus it was her duty to rule on the petition personally. (Pen. Code, § 1170.126, subds. (b), (j).)

Second, even assuming Judge Dugan did determine that defendant was eligible, Judge Levine was free to reconsider that determination. Defendant cites *People v. Riva* (2003) 112 Cal.App.4th 981, which stated, "It is often said as a general rule one trial judge cannot reconsider and overrule an order of another trial judge." (*Id*. at p. 991, fn. omitted.) However, *Riva* added, "Naturally, as with all general rules, there are exceptions . . . ." (*Ibid*., fn. omitted.)

Under the doctrine of priority of jurisdiction, "where a proceeding has been duly assigned for hearing and determination to one department of the superior court by the

9

presiding judge of said court in conformity with the rules thereof, and the proceeding so assigned has not been finally disposed of therein or legally removed therefrom, it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned. [Citation.] In other words, while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county, the other departments thereof are as distinct therefrom as other superior courts. [Citation.] If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion. [Citation.]" (*Williams v. Superior Court* (1939) 14 Cal.2d 656, 662.)

Nevertheless, "[t]he system of distribution of business among departments, particularly in the larger counties, often results in different departments properly hearing and determining different parts of an action or proceeding. Thus, one department may try an action or proceeding, and another may hear motions after judgment. [Citations.] May the judge in the second department make a determination inconsistent with that of the judge of the first department? Clearly so.

"There is *no jurisdictional conflict* if the cause has actually been transferred to the second department, so that the first department is no longer exercising continuing jurisdiction. And the first determination of a preliminary or interlocutory matter, e.g., an intermediate ruling on pleadings, is not res judicata. The judge who made the ruling may reverse himself or herself [citation], and it necessarily follows that another judge of the

10

same court exercising the jurisdiction over the cause may likewise reverse or modify the prior ruling.  [Citations.]"  (2 Witkin, Cal. Proc. 5th (2008) Courts, § 233, p. 321.)

In *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, disapproved on other grounds in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107, fn. 5, the jury in a limited civil matter returned a verdict awarding the plaintiff $58,000 — far above the jurisdictional limit of $25,000.  Judge Meiers, the trial judge, ordered a mistrial and reclassified the case as a general jurisdiction matter.  (*Id*. at p. 1037.)  After the case was reassigned to Judge Mackey, he ruled that Judge Meiers's order was erroneous; he entered judgment awarding the plaintiff $25,000.  (*Id*. at p. 1038.)

The appellate court held that Judge Mackey could properly overrule Judge Meiers. It explained that "the principle of priority of jurisdiction . . . is inapplicable . . . as there was no risk of conflicting simultaneous adjudications by different departments of the superior court."  (*Wozniak v. Lucutz*, *supra*, 102 Cal.App.4th at p. 1040.)  "Judge Meiers had transferred the matter out of her department and thus did not contemplate any further proceedings on the matter."  (*Id*. at p. 1041.)  Here, likewise, Judge Dugan had transferred the case.

A court has the inherent authority "to reconsider its prior interim orders so it may correct its own errors."  (*Le Francois v. Goel*, *supra*, 35 Cal.4th at p. 1107.)  Admittedly, this is not true of prior *final judgments*.  (See *id*. at 1105, fn. 4.)  "A judgment rendered in one department of the superior court is binding on that matter upon all other departments until such time as the judgment is overturned.  [Citation.]  Appellate jurisdiction to

review, revise, or reverse decisions of the superior courts is vested by our Constitution only in the Supreme Court and the Courts of Appeal. [Citation.]" (*Ford v. Superior Court* (1986) 188 Cal.App.3d 737, 742.) Here, however, Judge Dugan's minute order was strictly interim, not final.

We therefore conclude that Judge Levine had jurisdiction to determine that defendant was ineligible for resentencing.

V

THE TRIAL COURT'S ROLE AS TRIER OF FACT

Defendant contends that the trial court could not find that he intended to cause great bodily injury, so as to be ineligible for resentencing, unless this had already been pleaded and proved in the original conviction proceedings.

A.      *Statutory Background.*

Under the three strikes law as originally enacted, a third-striker — i.e., a defendant with at least two prior serious or violent felony convictions — was subject to an indeterminate sentence of at least 25 years to life for *any* subsequent felony conviction. A second-striker, with only one prior serious or violent felony conviction, was subject to a sentence of double the term otherwise provided.

The Reform Act modified this basic approach in two respects that are relevant here.

12

First, in most cases, both a second-striker and a third-striker now must be sentenced to double the term otherwise provided.  However, a third-striker still must be sentenced to at least 25 years to life in some circumstances, including when:

"[T]he prosecution pleads and proves any of the following:

"(i)  The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.  [Hereafter clause (i).]

"(ii)  The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and 285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 311.11, and Section 314.  [Hereafter clause (ii).]

"(iii)  *During the commission of the current offense, the defendant* used a firearm, was armed with a firearm or deadly weapon, or *intended to cause great bodily injury to another person*.  [Hereafter clause (iii).]"  (Pen. Code, § 667, subd. (e)(2)(C), italics added; accord, Pen. Code, § 1170.12, subd.  (c)(2)(C).)

Second, a person sentenced as a third-striker before the Reform Act became effective can petition to be resentenced under the Reform Act's more lenient scheme. (Pen. Code, § 1170.126.)  When the trial court receives a petition for resentencing, it must determine whether the petitioner is eligible for resentencing.  (Pen. Code,

13

§ 1170.126, subd. (f).)  An inmate is eligible for resentencing if, among other things, "[t]he inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 . . . ."  (Pen. Code, § 1170.126, subd. (e)(2).)  If the court determines that the petitioner is eligible, it must resentence him or her, "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (Pen. Code, § 1170.126, subd. (f).)

B.    *Analysis*.

Eligibility under clause (i) and clause (ii) always will have been conclusively established in the original conviction proceeding — the petitioner either was or was not convicted of a specified offense and/or enhancement.

But what if the petitioner's eligibility under clause (iii) turns on whether he or she used a firearm?  In most cases, if, as a factual matter, the petitioner used a firearm, the prosecution had the option of alleging a personal firearm use enhancement.  (Pen. Code, § 12022.5, subd. (a).)  If such an enhancement has been alleged and either admitted or found true, then it has been conclusively established that the petitioner is ineligible.  But what if firearm use was alleged and not found true?  And what if it simply was not alleged?  Could the prosecution still attempt to prove, in the resentencing proceeding, that the petitioner did, in fact, use a firearm?  Or does the failure to plead and prove firearm use in the original conviction proceeding bar the prosecution from proving firearm use in the resentencing proceeding?

14

And what if the petitioner's eligibility under clause (iii) turns on whether he or she intended to cause great bodily injury? This fact will rarely, if ever, have been established in the original conviction proceeding. Unlike with personal firearm use, there is no enhancement that requires *only* the intent to cause bodily injury, *standing alone*; thus, even when the defendant did intend to cause great bodily injury, the People normally have no way of charging or alleging this.

In *People v. Blakely* (2014) 225 Cal.App.4th 1042, the court held that "a trial court determining eligibility for resentencing under the Act is not limited to a consideration of the elements of the current offense and the evidence that was presented at the trial (or plea proceedings) at which the defendant was convicted. Rather, the court may examine relevant, reliable, admissible portions of the record of conviction to determine the existence or nonexistence of disqualifying factors. [Citation.]" (*Id*. at p. 1063.)

It explained, "That voters did not intend disqualification under [the Reform Act] to require pleading and proof of a formal offense or enhancement is readily apparent from their inclusion, as a disqualifying factor, of an inmate's intent, during commission of the current offense, to cause great bodily injury to another person. We are aware of no provision criminalizing, or permitting imposition of an additional sentence for, the mere intent to cause great bodily injury to another person." (*Id*. at p. 1059.) It also reasoned that this construction was necessary "in order to effectuate the electorate's intent to leave, subject to indeterminate life sentences, those inmates perceived as posing a risk to public safety . . . ." (*Id*. at p. 1059.)

Defendant argues that there are, in fact, a handful of offenses and enhancements that require an intent to cause great bodily injury. (Pen. Code, §§ 588a [felonious deposit of an injurious substance on a highway], 600, subd. (d) [enhancement for intentionally causing great bodily injury to a person while maliciously harming a police dog or horse], 12022.55 [enhancement for discharging a firearm from a motor vehicle with the intent to cause great bodily injury or death].)[4] However, this is beside the point. What matters is that there is no offense or enhancement based on "the *mere* intent to cause great bodily injury to another person," i.e., *without more*. (*People v. Blakely*, *supra*, 225 Cal.App.4th at p. 1059, italics added.)

Defendant also argues that Penal Code section 1170.126, subdivision (e)(2) incorporates the "pleads and proves" requirement of Penal Code section 667, subdivision (e)(2)(C). This argument was rejected in *People v. White* (2014) 223 Cal.App.4th 512. It explained that Penal Code section 1170.126 explicitly incorporates clauses (i)-(iii), but does not incorporate the "pleads and proves" wording that precedes those clauses. (*People v. White*, *supra*, at pp. 526-527.) It added: "[T]he pleading and proof requirement plainly is a part of only the *prospective* part of the Reform Act, which

---

**4** Defendant also cites Penal Code section 625c (tampering with a transit system), but it appears that this offense can be committed in several ways, some requiring the intent to cause great bodily injury and some not.

In addition, he cites Penal Code section 12022.9 (enhancement for personally inflicting injury resulting in termination of pregnancy), but this requires only the intent to inflict injury, not the intent to inflict *great bodily* injury.

16

governs the *sentencing* of a *defendant* with 'two or more prior serious and/or violent felony convictions' who has suffered a third felony conviction; it is *not* a part of section 1170.126, the *retrospective* part of the Reform Act that governs a petition for *resentencing* brought by an *inmate* already serving a life sentence under the Three Strikes law." (*Id*. at p. 527.)

Next, defendant notes that an inmate is eligible for resentencing if his or her "current *sentence* was not *imposed for* any of the *offenses* appearing in clauses (i) to (iii) . . . ." (Pen. Code, § 1170.126, subd. (e)(2), italics added.) He argues that this does not incorporate any references to *uncharged conduct* in clause (iii). Alas for defendant, after he filed his opening brief, *People v. Osuna* (2014) 225 Cal.App.4th 1020 rejected this argument: "Defendant points out that his current sentence was 'not imposed for any of the offenses appearing' in section 667, subdivision (e)(2)(C)(i) through (iii) . . . , as stated in section 1170.126, subdivision (e)(2). We recognize this is the literal language of the statute. The literal language of a statute does not prevail if it conflicts with the lawmakers' intent, however. [Citations.] We do not regard the language of section 1170.126, subdivision (e)(2) as indicating an intent to require a tethering offense, or the pleading and proof of an enhancement . . . , in order to trigger the disqualifying factors contained in subdivision (e)(2)(C)(iii) of section 667 and subdivision (c)(2)(C)(iii) of section 1170.12. As previously set out, those factors are: 'During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.' We are aware of no

17

provision criminalizing, or permitting imposition of an additional sentence for, the mere intent to cause great bodily injury to another person. Moreover, the drafters of the initiative knew how to require a tethering offense or enhancement if desired. [Citations.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033-1034.)

Defendant raises one argument not yet considered in any published case, as far as we can tell. He asserts that the Reform Act was not intended to allow an evidentiary hearing on the petitioner's intent to cause great bodily injury because "the voters created a much more reasonably implemented safety-valve under section 1170.126(f) whereby a resentencing court can exclude anyone it determines 'would pose an unreasonable risk of danger to public safety.'" (Fn. omitted.) If that were the case, however, Penal Code section 1170.126, subdivision (e)(2) would not have incorporated clause (iii) at all; it would have been left up to the trial court to decide whether an inmate who used a firearm or who intended to cause great bodily injury in the conviction offense is unreasonably dangerous. As Penal Code section 1170.126 is written, it is clearly intended to prevent the trial court from finding that a petitioner who did intend to cause great bodily injury is, nevertheless, not dangerous and thus eligible for resentencing.

C. *"Unfair Procedures."*

Defendant claims that:

1. The trial court considered police reports and the preliminary hearing transcript, even though they were inadmissible hearsay.

2. Defendant was compelled to testify against himself.

18

3.  Defendant was unable to confront the victim (because the victim had died since the original trial).

4.  The trial court "presumed [defendant] guilty" (i.e., ineligible).

Defendant does *not* raise any of these claims as independent grounds for reversal. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [brief must state each point under a separate heading or subheading summarizing the point].)  Rather, he argues that the Reform Act should not be construed as allowing the trial court to determine, as trier of fact, whether he intended to cause great bodily injury, because any such construction would lead to such "inherently unfair procedure[s]."[5]

1.      *Consideration of the police reports and the preliminary hearing*
        *transcript.*

The Reform Act does not authorize the trial court to consider otherwise inadmissible hearsay.  While this appeal was pending, *People v. Bradford* (2014) 227 Cal.App.4th 1322 held that, in determining whether an inmate is eligible for resentencing, a trial court can consider the record of conviction and *only* the record of conviction.  (*Id*. at pp. 1336-1340.)  We agree with and adopt the analysis in *Bradford*.

The trial court did err by considering the police reports, because they were not part of the record of conviction.  Moreover, while a preliminary hearing transcript can be part of the record of conviction, in this case, the trial court should not have considered it,

_____

**5**      Some of these claims are also relevant to defendant's contention that the trial court violated equal protection.  (See part V, *post*.)

because the trial transcript was available.  (*People v. Houck* (1998) 66 Cal.App.4th 350, 355-357.)

As noted, defendant does not argue that the trial court's consideration of the police reports and the preliminary hearing transcript was reversible error.  It was not.  Defense counsel asked the trial court to review the preliminary hearing transcript.  Thus, this error was invited.  The police reports have not been included in the appellate record.  As a result, we cannot say that they had any effect on the outcome.  Quite the contrary, it seems clear that they did not; after reading only the trial transcript, the trial court already felt "very strongly, by clear and convincing evidence, that [defendant] intended to cause great bodily injury."

Precisely because the Reform Act does not allow the trial court to consider police reports or preliminary hearing transcripts in determining eligibility, the harmless errors in this case do not call into question the Reform Act as whole.

2.    *Compelled testimony*.

The Reform Act likewise does not authorize the trial court to compel a petitioner to testify.  Indeed, because the trial court should not have considered any evidence outside the record of conviction (see part IV.C.1, *ante*), it erred by taking any live testimony at all.  The error, however, did not violate the federal constitution, because defendant was not compelled to testify; he chose to testify voluntarily.  (See fn. 1, *ante*.)

3.    *Confrontation.*

Defendant complains that, because King had died, he was unable to cross-examine King. However, as already discussed, the Reform Act limits the trial court's consideration to the record of conviction. Thus, in a resentencing proceeding, the petitioner cannot cross-examine *any* of the prosecution witnesses, regardless of whether they are available.

This inability to cross-examine, however, does not undermine the Reform Act. The introduction of testimonial hearsay does not violate the constitution when, as here, the declarant is unavailable and the defendant has had a previous opportunity to cross-examine the declarant. (*Crawford v. Washington* (2004) 541 U.S. 36, 53-54; *People v. Wilson* (2005) 36 Cal.4th 309, 340-343, 347.)

Defendant suggests that, because the intent to cause great bodily injury was not at issue in the first trial, he did not have the same motive and interest in cross-examination. A similar motive and interest are statutory requirements for the admission of former testimony under Evidence Code section 1291, subdivision (a)(2); it is far from clear that they are also constitutional requirements. Even if so, however, "[t]he 'motives need not be identical, only "similar."'  [Citation.]" (*People v. Harris* (2005) 37 Cal.4th 310, 333.) While (as the trial court noted) the issue of whether defendant *used force likely* to cause great bodily injury was not identical to the issue of whether he *intended* to cause great bodily injury, both issues turned on the same *evidence*; absent a statement by defendant regarding his intent, his intent had to be inferred from the surrounding circumstances.

21

These included the fact that he punched King in the head and kicked him in the head with steel-toed boots, as well as the number of punches and kicks. Thus, defendant had a similar interest and motive in cross-examining King at trial.

We may assume, without deciding, that under some circumstances not present here, the introduction of a witness's trial testimony in the resentencing proceeding *could* violate the confrontation clause. In that event, however, the petitioner would have a remedy — he or she could object based on the confrontation clause. Thus, this possibility does not require us to hold that the trial court can *never* determine eligibility, based on the record of conviction, as trier of fact.

### 4. *Presumption of innocence.*

Penal Code section 1170.126 does not clearly specify who has what burden of proof. While this appeal was pending, however, *People v. Osuna*, *supra*, 225 Cal.App.4th 1020 held that, in a resentencing proceeding, the prosecution has the burden of proving ineligibility by a preponderance of the evidence. (*Id*. at p. 1040.)

Defendant suggests that the trial court "abandon[ed] the presumption of innocence . . . ." Elsewhere, he states that he "was . . . presumed guilty . . . based on the transcript . . . ." The record, however, demonstrates that the trial court properly placed the burden of proof on the prosecution.

The prosecution took the initiative of proving defendant ineligible by introducing the partial trial transcript. After reading the entire transcript, the trial court tentatively found that it proved ineligibility "by clear and convincing evidence." As we noted in part

22

IV.C.1, *ante*, the trial court was supposed to limit its consideration to the record of conviction. Nevertheless, it allowed defendant to try to rebut its tentative finding of ineligibility by offering his own testimony. After he had done so, it found his testimony "less than credible."

Defendant's statement that he "was . . . presumed guilty . . . based on the transcript" is misleading. Once the prosecution introduced the transcript, no "presumption" was involved; rather, the prosecution had carried its burden of proof with the transcript, and defendant failed to introduce convincing rebuttal evidence. The trial court properly found that the prosecution affirmatively proved ineligibility.

Finally, even assuming that, in this case, the trial court erroneously placed the burden of proof on defendant, the Reform Act itself places the burden of proof on the prosecution; thus, this does not affect our construction of the Reform Act.

We therefore conclude that the trial court did not err by deciding, as trier of fact, whether defendant intended to cause great bodily injury.

VI

EQUAL PROTECTION

Defendant contends that the disparate treatment of "prospective defendants" and "retrospective defendants" violates equal protection.

Defendant defines a "prospective defendant" as a third-striker sentenced after the effective date of the Reform Act. He defines a "retrospective defendant" as a third-striker sentenced before the effective date of the Reform Act who has petitioned for

23

resentencing.  Defendant claims that, in determining eligibility, the Reform Act treats

prospective and retrospective defendants differently with respect to:

1.  The right not to be compelled to testify against oneself;

2.  The right to confront witnesses; and

3.  The right to require the prosecution to prove ineligibility beyond a reasonable

doubt in a jury trial.

Defendant, however, did not raise an equal protection claim below.  Accordingly,

he has forfeited this contention.  (*People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14;

*People v. Carpenter* (1997) 15 Cal.4th 312, 362; *People v. Hartshorn* (2012) 202

Cal.App.4th 1145, 1151.)

Separately and alternatively, we also reject the claim on the merits.

As discussed in part IV.C.2, *ante*, the Reform Act does not allow the trial court to

compel any defendant to testify.

And as discussed in part IV.C.3, *ante*, the Reform Act does not override the

confrontation clause, which can be invoked by prospective and retrospective defendants

alike.  Admittedly, in retrospective cases, both sides are limited to the record of

conviction, whereas in prospective cases, the prosecution can call live witnesses and the

defendant can cross-examine them.  However, this flows from the retrospective nature of

a resentencing proceeding.  A retrospective defendant has already had the benefit of

cross-examination in the original trial.

The Reform Act does treat prospective and retrospective defendants differently in one respect: Prospective defendants have a right to a jury trial, in which the prosecution must prove ineligibility beyond a reasonable doubt, but retrospective defendants have no right to a jury trial and the prosecution need only prove their ineligibility by a preponderance of the evidence (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1040).

As a matter of due process, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.)

In the case of a prospective defendant, Penal Code section 667, subdivision (e)(2)(C) provides that a third-striker "shall" be sentenced like a second-striker, "unless the prosecution pleads and proves" a disqualifying factor. Accordingly, a second-strike sentence is the statutory maximum; a disqualifying factor is a fact that increases the penalty beyond the statutory maximum. A disqualifying factor therefore must be tried to a jury and proven beyond a reasonable doubt. (See *Descamps v. United States* (2013) ___ U.S. ___ [133 S.Ct. 2276, 2288].)

By contrast, a retrospective defendant has already been found guilty and sentenced — according to the law then in effect — to a sentence of at least 25 years to life. Penal Code section 1170.126, subdivision (e) does not change the statutory maximum sentence; it merely allows certain third-strikers to obtain a *reduction below* the statutory maximum. Thus, it does not violate *due process* to require the prosecution to prove a disqualifying

25

factor to a jury beyond a reasonable doubt with respect to prospective defendants, but not retrospective defendants. (*People v. Bradford*, *supra*, 227 Cal.App.4th at pp. 1334-1336.)

Defendant is arguing, however, that it does violate *equal protection*. This claim is subject to the rational basis test. (See *People v. Wilkinson* (2004) 33 Cal.4th 821, 836-837.) Under this test, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.]" (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

There is a rational basis for denying retrospective defendants a jury trial: To minimize the administrative burden of their resentencing proceedings. Prospective defendants get one opportunity to have a jury trial. Retrospective defendants have already had one opportunity to have a jury trial. By allowing retrospective defendants to petition for resentencing, the Reform Act affords them a second fact-finding proceeding. Moreover, retrospective defendants have only a two-year window to petition for resentencing (subject to extensions for good cause). (Pen. Code, § 1170.126, subd. (b).) It would place an undue burden on the courts to offer all retrospective defendants a second opportunity for a jury trial within just two years.

There is likewise a rational basis for lowering the prosecution's burden of proof with respect to retrospective defendants: Some time has passed since the defendant's original trial — often years and years. During that time, memories fade, witnesses become unavailable, and documents are lost or destroyed. Applying the beyond-a-

26

reasonable-doubt standard so late in the game would tilt the playing field in favor of retrospective defendants.

Defendant even concedes that "with respect to retrospective defendants, '[w]itnesses and evidence may simply be unavailable years after an inmate has been sentenced, which would transform the beyond a reasonable doubt standard . . . into an insurmountable bar.'" He notes, however, that a retrospective defendant can be denied second-strike sentencing based on a finding of dangerousness (Pen. Code, § 1170.126, subd. (f)), whereas a prospective defendant cannot. He concludes that this is sufficient to level the playing field.

We disagree. The drafters of the Reform Act decided to deny second-strike sentencing to both prospective and retrospective defendants based on the nature of their convictions. The fact that, with regard to retrospective defendants, those convictions are in the past (and often long in the past) is sufficient to justify a different burden of proof. The drafters *also* made a decision to deny second-strike sentencing to retrospective defendants based on their current dangerousness. The drafters could rationally view these two decisions as separate. Indeed, defendant also concedes that "[t]here is clearly a rational basis for distinguishing retrospective defendants from prospective defendants based on dangerousness because retrospective defendants may have become dangerous during the months, years, or decades following their initial sentence." There is no necessary trade-off or equivalence between these two decisions.

27

We therefore conclude that defendant has not shown any equal protection violation.

## VII

## DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____

J.

We concur:

HOLLENHORST _____
       Acting P. J.

KING _____
       J.