Filed 4/21/16  P. v. Baker CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRUCE OWEN BAKER,<br><br>Defendant and Appellant. | F070902<br><br>(Super. Ct. No. SC077324B)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

J. Peter Axelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Levy, Acting P.J., Kane, J., and Smith, J.

In 1999, Bruce Owen Baker was convicted of three counts of selling heroin and was sentenced to a third-strike sentence of 80 years to life.  In 2014, he sought relief from this sentence pursuant to the provisions of Penal Code section 1170.126.[1]  The trial court denied Baker's petition.  Baker argues the trial court erred because it misconstrued the record, and there is insufficient evidence to support the trial court's conclusion that he posed an unreasonable risk of danger to public safety.  We disagree and affirm the order.

### FACTS AND PROCEDURAL HISTORY

In 2014, Baker filed a petition for recall of his sentence pursuant to section 1170.126.  The petition alleged that in 1999, Baker was convicted of three counts of selling heroin in violation of Health and Safety Code section 11352, and one count of conspiracy to sell heroin in violation of section 182, subdivision (a)(1).  In addition, the following enhancements were found true:  (1) two prior convictions that constituted strikes within the meaning of section 667, subdivisions (b)-(i); (2) a prior conviction for selling a controlled substance within the meaning of Health and Safety Code section 11370.2, subdivision (a); and (3) two prior prison sentences within the meaning of section 667.5, subdivision (b).  The prior-strike convictions were a 1983 conviction for voluntary manslaughter (§ 192.1) and a 1993 conviction for first degree burglary (§ 459).  Baker was sentenced to a determinate sentence of five years and an indeterminate term of 75 years to life.  Finally, the petition alleged that, because of the Three Strikes Reform Act of 2012, if convicted of the same crimes and enhancements today, Baker would face a maximum sentence of 12 years eight months in prison.

The district attorney's office opposed the petition, arguing that, while Baker may be eligible for resentencing, the petition should be denied because Baker posed an unreasonable risk of danger to public safety.

---

[1]Subsequent statutory references are to the Penal Code unless stated otherwise.

2.

The trial court denied the petition finding release of Baker would result in an unreasonable risk of danger to public safety.

## *DISCUSSION*

Baker filed his motion pursuant to section 1170.126. This section describes those eligible for resentencing as those serving an indeterminate third-strike sentence; also, (1) the inmate is not serving a sentence for a crime that is listed as a serious or violent felony (§§ 667.5, subd. (c) & 1170.12, subd. (b)); (2) the inmate is not serving a sentence for a crime that is listed in section 667, subdivision (e)(2)(C), clauses (i) through (iii), or section 1170.12, subdivision (c)(2)(C), clauses (i) through (iii); and, (3) the inmate does not have a prior conviction for an offense appearing in section 667, subdivision (e)(2)(C), clause (iv), or section 1170.12, subdivision (c)(2)(C), clause (iv). (§ 1170.126, subd. (e).)

The trial court concluded, and the parties agree, that Baker met the eligibility requirements for resentencing. If the petitioner is eligible for resentencing, "the petitioner shall be resentenced pursuant to paragraph (1) of subdivision (e) of Section 667 and paragraph (1) of subdivision (c) of Section 1170.12 unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising its discretion, "the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

The dispute in this case is whether the trial court erred when, in the exercise of its discretion, it determined that resentencing Baker would pose an unreasonable risk of danger to public safety. Baker begins his argument by raising numerous procedural issues that have been addressed in prior cases and many of which are now pending before

3.

the California Supreme Court. This court has addressed these issues in published cases, which the Supreme Court has accepted for review. Since these issues have already been addressed and will likely be addressed by the Supreme Court, we will simply state our conclusions with citations to published cases which have not been accepted for review, if possible.

First, in the trial court, the burden was on the prosecution to prove by a preponderance of the evidence that resentencing Baker posed an unreasonable risk of danger to public safety. Baker was not entitled to a jury trial. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1038-1040; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1301-1305.)

Second, we review the trial court's ruling under the deferential abuse of discretion standard. Section 1170.126, subdivisions (f) and (g), clearly state that when the trial court decides if a petitioner poses an unreasonable risk of danger to public safety, it is exercising its discretion. No reasonable interpretation of these subdivisions could arrive at a different conclusion.

Third, as this court concluded in *People v. Valencia* (2014) 232 Cal.App.4th 514, the definition of unreasonable risk of danger to public safety found in Proposition 47 and codified in section 1170.18, subdivision (c), is not applicable to petitions filed pursuant to Proposition 36 as codified in section 1170.126. We recognize the Supreme Court has granted the petition for review of *Valencia* (review granted Feb. 18, 2015, S223825), but unless the Supreme Court concludes otherwise, our analysis remains unchanged.

Which leads us to the issue in this case: Did the trial court abuse its discretion when it concluded Baker posed an unreasonable risk of danger to public safety? As stated above, section 1170.126, subdivision (g), provides the trial courts with guidance in exercising their discretion. This subdivision permits, but does not require, the trial courts to consider (1) the petitioner's criminal conviction history, (2) the petitioner's

disciplinary and rehabilitation history while incarcerated, and (3) any other evidence the trial court determines to be relevant.

In this case, the trial court had before it several documents. The first was the probation report prepared for the hearing on Baker's petition (the lead probation report). This report indicated Baker was convicted in 1999 of three counts of possession of heroin for sale and one count of conspiracy to sell heroin. It was also found true that Baker had suffered a prior conviction for possession for sale (Health & Saf. Code, § 11370.2, subd. (a)) and had served two prior prison terms within the meaning of section 667.5, subdivision (b).

Attached as an exhibit to the lead probation report was the probation report prepared for the original sentencing hearing. As relevant here, this report provides Baker's criminal history, which we summarize below. The lead probation report also attached as exhibits probation reports from two of Baker's prior sentencing hearings. Information from these reports will be referred to when relevant.

Baker's first contact with law enforcement occurred in 1959 when he was placed on probation after a sustained juvenile petition alleging that he was "Out of Control." In 1962, the second sustained juvenile petition found that Baker committed grand theft, and he was committed to Camp Erwin Owen. Baker escaped from this camp and was sentenced to what was known at the time as the California Youth Authority (CYA), now known as the Department of Juvenile Justice (DJJ). When paroled, Baker violated parole and was subsequently discharged to the California Department of Corrections (CDC). The fourth sustained juvenile petition against Baker was in 1964 for grand theft auto. Baker was returned to CYA.

In 1965 Baker was convicted of fighting in public or disturbing the peace. (§ 415.) He was sentenced to 60 days in jail.

In 1965, Baker was convicted of vehicle theft. (Veh. Code, § 10851.) He was sentenced to six months to five years in CDC. He was paroled in 1967, violated parole in 1969, and was discharged in 1970.

In 1969 Baker was convicted of resisting arrest. (§ 148.[2]) He was sentenced to 90 days in jail. Apparently he was also convicted of trespassing in this year and sentenced to 10 days in jail.

In 1970, Baker was sentenced to five days in jail for, apparently, public drunkenness, and was sentenced to time served for driving while intoxicated and driving without a driver's license. Later that year he was convicted of felony burglary and sentenced to three years' probation, including 12 months in jail. Finally, he was convicted of petty larceny in Nevada and sentenced to two weeks in jail.

In 1971, Baker was convicted of robbery and placed on three years' probation, including 12 months in jail. Later that year, Baker was convicted of escape and placed on three years' felony probation, including one year in jail.

In 1974, Baker incurred his first drug-related offense, possession of a controlled substance (Health & Saf. Code, § 11377), and was placed on three years' misdemeanor probation, which included 180 days in jail. Later that year, he was convicted of receiving stolen property (§ 496) and was placed on 13 months' felony probation, including one year in jail.

In 1975 Baker was convicted of driving while under the influence of alcohol or a drug (Veh. Code, § 23105, renumbered in 1981 to § 23152), and sentenced to one year misdemeanor probation, including 90 days in jail. In 1976, Baker was convicted of the same offense, and placed on two years' misdemeanor probation, including 180 days in jail.

_____

[2]The probation report lists the date of this offense as 1989. We suspect this is a typographical error, as the following conviction occurred in 1970.

In 1978, Baker was convicted of vehicular manslaughter (former § 192.3, subd. (a)),[3] and was sentenced to 365 days in jail. Later that year Baker was convicted of battery of a police officer and sentenced to one year in jail.

In 1981, Baker was convicted of using or being under the influence of a controlled substance (Health & Saf. Code, § 11550), and was sentenced to three years' misdemeanor probation, including 90 days in jail. He was later convicted of sales of a controlled substance and sentenced to one year in jail.

In 1982, Baker was convicted of voluntary manslaughter (former § 192.1) and was sentenced to six years in prison. The report describes the crime as occurring after Baker hit the victim with a club. The victim then reached for a shotgun, at which time Baker shot and killed the victim. Baker violated parole seven times and was ultimately discharged in 1991. The CLETS report for this offense indicates Baker was charged with murder, robbery and burglary, but these charges were dismissed in the furtherance of justice, apparently as part of a plea bargain. The probation report for this conviction indicates Baker was mad at the victim, Robert Campbell, because Campbell sold drugs to and had intercourse with Baker's girlfriend. The report indicates the relationship was either consensual or rape. Baker devised a plan to steal drugs and money from Campbell, so he went to the house with an accomplice for that purpose. Baker was apparently upset regarding Campbell's relationship with Baker's girlfriend. When Baker entered the residence, he struck and shot Campbell.

In 1988, Baker was convicted of misdemeanor vandalism and was placed on three years' misdemeanor probation. Later that year, he was convicted of possession of a controlled substance (marijuana) (Health & Saf. Code, § 11357, subd. (b)) and was placed on three years' misdemeanor probation with time served in jail.

---

[3]This section apparently was deleted and added to section 192. See *Wood v. McGovern* (1985) 167 Cal.App.3d 772, 774, fn. 3.

In 1989, Baker was convicted of petty theft and was sentenced to three years' misdemeanor probation, including 90 days in jail. Later that year he was convicted of possession of drug paraphernalia and was sentenced to 99 days in jail, which was time already served.

In 1991, Baker was convicted of possession of heroin for sale and was sentenced to three years in prison. He was paroled in 1993. Later in 1991, he was convicted of possession of a controlled substance (Health & Saf. Code, § 11550), driving under the influence (Veh. Code, § 23152, subd. (a)), and driving without a driver's license (Veh. Code, § 12500, subd. (a)). He was sentenced to 180 days in jail.

In 1993, Baker was convicted of first degree burglary when he stole approximately $30,000 worth of jewelry and other items from a home. He was sentenced to three years in prison pursuant to a plea agreement. He was paroled in 1995 but returned to custody on seven occasions, presumably for parole violations. The probation report from this conviction was included as an attachment to the lead probation report.

Also attached to the lead probation report was information from the Department of Corrections regarding Baker's current incarceration. The first rules violation occurred on May 27, 1993, when Baker submitted a urine sample that tested positive for morphine.

The second rules-violation report occurred on March 29, 1995, when a second urine sample again revealed the presence of morphine.

A third rules-violation report occurred on July 5, 1997, when Baker failed to have in his possession a fork before leaving the serving line, a rules violation.

A fourth rules-violation report was generated for an incident that occurred on April 7, 2002. Baker was observed displaying abnormal behavior and was escorted to a medical clinic for evaluation. Baker refused to provide a urine sample for urinalysis, which is apparently a violation of prison rules.

The fifth rules-violation report indicated that, on April 30 and May 1, 2002, Baker participated in a planned work strike and refused to report to work when ordered to do so.

8.

On September 12, 2002, a sixth violation occurred when Baker was observed kissing and licking the fingers of a visitor, a rules violation.  Lastly, in February 2003, Baker failed to report to his assigned placement in the vocational nursery on four days.

In addition to this information, in his reply to the prosecution's opposition, Baker provided information indicating he attended some meetings of the Narcotics Anonymous chapter in the third quarter of 2013.  The number of meetings attended was not stated, and there is no information to suggest Baker attended meetings at any other time while he was incarcerated.  Baker also provided information suggesting that, for portions of his incarceration, he provided satisfactory work in the tasks for which he was employed.  The time frame for these reports is March through November 2003; January through February 2005; February, May, and June 2006; and January 2007.[4]  An education progress report indicated Baker was enrolled in five units with satisfactory behavior in 2011.  Another report indicated he took courses in the nursery operations vocation in 2003 with apparently no units earned at the time of the report, nor is there any indication he attended classes at any other time during his incarceration.

These reports raise more questions about Baker than provide support for him.  No work reports were provided for the majority of Baker's incarceration leading one to suspect either he did not work most of the time he was incarcerated or his work was far from satisfactory.  Similarly, the education reports only suggest Baker took some courses while incarcerated but do not indicate that any were completed or that any degree or certificate was earned.  Again, this leads one to assume Baker accomplished nothing toward improving his education while incarcerated.  Finally, the information from the Narcotics Anonymous chapter indicates that Baker attended as few as one meeting during his entire period of incarceration.  No reasonable person could infer from this meager

---

[4]The exact time frame covered by these work supervisor's reports is unclear. Several indicate the reports were made for a quarter of the year.

information that Baker had attempted to rehabilitate himself while incarcerated.

Perhaps more support for Baker's argument can be found in what is not in the record. There is little to indicate Baker's behavior while incarcerated was anything but trouble free, with the last minor rules violation occurring more than 10 years ago.

Section 1170.126, subdivision (g), suggests that the trial court consider a petitioner's criminal history, his disciplinary record, his rehabilitation record, and any other evidence the trial court deems relevant when determining if a petitioner poses an unreasonable risk of danger to public safety. As discussed above, Baker's disciplinary record does not suggest he posed a danger to public safety, but his rehabilitation record did not support the argument he was reformed. The other argument made in the trial court was, in essence, that because of Baker's advanced age (approximately 69 at the time of the hearing), he was no longer a danger to public safety.

Weighed against each of these factors was Baker's long, and virtually uninterrupted, 40-year criminal record. His first sustained juvenile petition occurred in 1959, with his last conviction in 1999. Baker was responsible for two deaths. It would appear that one was the result of drunk driving (1978) and the other the result of an assault perpetrated by Baker because of a perceived connection between the victim, a drug dealer, and Baker's girlfriend (1982). Baker shot and killed the victim, apparently because the victim reached for a firearm to protect himself from Baker's assault. In between the first and last convictions were numerous convictions, many misdemeanors, but all evidencing a complete disdain for the law.

We emphasize our review is limited to determining whether the trial court abused its discretion when it concluded Baker was a danger to public safety, not what we may have done had the petition been before us in the first instance. Our limited review leads to the inescapable conclusion that the trial court did not abuse its discretion. There has never been a significant period in Baker's adult life where he has not posed a danger to public safety, unless he was incarcerated. Baker admitted in several probation reports

that he was a drug addict. He has no significant work history, so the only logical conclusion is that he either sold drugs to support his habit or committed crimes to purchase drugs. His record confirms both types of conduct. Moreover, his record confirms he repeatedly drove while under the influence of drugs or alcohol, apparently causing one death. His prison record does not support the conclusion that Baker has overcome his addiction, so it was reasonable for the trial court to conclude that, if released, Baker will return to his former lifestyle, placing the public's lives and property at risk.

Baker argues the trial court erred because it misinterpreted his vehicular manslaughter conviction. Baker asserts, correctly, that he was not convicted of driving under the influence of alcohol or drugs, only vehicular manslaughter. Even though he was charged with driving while under the influence when he was arrested, Baker asserts that is not proof he was intoxicated when he caused a vehicle crash that resulted in the death of another person.

Even if we were to agree with Baker that it is unreasonable to infer he was under the influence when he killed the victim, our analysis would not change and any error by the trial court would be deemed harmless. The relevant fact is that Baker killed someone while driving, and, at the time, he was committing an unlawful act not amounting to a felony. Whether that unlawful act was driving while intoxicated or some other crime does not change the fact that Baker's conduct evinced an absence of any concern for the public's safety. Since nothing in the record suggests Baker's attitude has changed, the trial court could and should infer from this conduct that Baker would pose a danger to public safety if released from prison. No error occurred.

Baker also argues the record does not support the trial court's conclusion that he posed an unreasonable risk of danger to public safety. The facts on which Baker relies are his advanced age, his 16 years of incarceration, the brief period of time during these 16 years that he attended Narcotics Anonymous meetings, the lack of evidence of drug

11.

use since 2002, and the age of his prior convictions. He asserts the only reasonable conclusion that can be drawn from these facts is that he is no longer a drug addict and, consequently, would not commit any crimes to support his drug addiction.

This is, in essence, the same argument Baker made in the trial court, and it is no more compelling in this court. Certainly, the trial court could have concluded from this evidence that Baker was not a danger to public safety. But the trial court acted well within its discretion when it concluded otherwise. Once again, Baker's 40-year life of crime, the absence of any job skills, the lack of any viable means to support himself, and the lack of any real plan if he were released all strongly suggest the most likely course Baker would take if he were released would be to return to the life he has known his entire adult life, a life of addiction and crime.

Baker also minimizes the crime for which he is currently incarcerated. He was convicted of selling heroin, which he asserts he only did to support his drug addiction. Not only was Baker committing a crime to support his addiction, it is likely those to whom he sold heroin were also committing crimes to support their addictions. Accordingly, the actions Baker took to support his addiction endangered public safety.

The record in this case provides overwhelming evidence that Baker would pose an unreasonable risk to public safety if he were resentenced. The trial court did not abuse its discretion when it denied his petition.

### *DISPOSITION*

The order denying Baker's petition is affirmed.

12.